# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

Appeal No. 24-1389

**UNITED STATES OF AMERICA,**
Appellee

v.

**DANIEL E. CARPENTER,**
Defendant-Appellant

## PETITIONER DANIEL E. CARPENTER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S RULE 27(c) MOTION FOR SUMMARY DISPOSITION

**PRELIMINARY STATEMENT**

It was over 20 years ago that the distinguished Harvard Law professor Alan Dershowitz lectured a packed courtroom in the Moakley Courthouse pointing out all of the defects in the Carpenter Indictment. And 20 years later those defects in the Indictment still remain.

AUSA Lockhart asks this Court to ignore Justice Breyer's detailed opinion for a rarely unanimous Supreme Court in *Xiulu Ruan v. United States* and summarily dismiss Petitioner-Carpenter's appeal of Judge O'Toole's summary dismissal which is entirely based on this Court's summary dismissal in July 2022 based on AUSA Mark Quinlivan's Rule 27 Motion that stated there was no problem with the Government presenting eight witnesses that lied to convict one innocent man. See Petitioner's letter to Justice Breyer attached as Exhibit One. Since that time, in addition to Justice Breyer's Opinion in *Ruan*, Petitioner-Carpenter is the leading beneficiary in the Country over the demise of the "Right to Control Theory of Fraud" in *Ciminelli*, *Percoco*, and *Binday* (more unanimous decisions) and the Supreme Court's new watershed decision of constitutional law regarding the Vicinage Clause in *Smith*. While AUSA Quinlivan lied to this Court about the Venue Clause being argued "*ad nauseum*" (it has not been discussed since 2005), this Court should ask AUSA Lockhart to find any mention of the Vicinage Clause as elaborated on in the *Smith* decision in any of the 700 plus docket entries in *U.S. v. Carpenter*, and if he cannot

find anything mentioned there about the Vicinage Clause, he should be recommended for disbarment or at the very least separation from government service.

The bottom line is, if Professor Dershowitz was right in 2004, and Justice Breyer was right in 2022, and the First Circuit was right in *Abdelaziz* in 2023, then the 2004 Indictment was defective and the District Court in Boston lacked jurisdiction and Petitioner-Carpenter's conviction must be vacated as a matter of law. The claim that the District Court lacked jurisdiction due to a defective indictment can be raised at any time and even for the first time on appeal to this Court or the Supreme Court.

# I. THE SUPREME COURT'S DECISION IN *XIULU RUAN v. UNITED STATES* REQUIRES THIS COURT TO VACATE PETITIONER'S CONVICTION

AUSA Lockhart mentions only three cases and says they should prevent this Court from doing Justice, despite all of the famous quotes about Justice in Moakley Courthouse such as Justice Brandeis's words:

> "And to understand how the brick of this building embodies Joe Moakley's spirit, you should also look closely at the plaque inset in the brick of the arch at the front door. Carved in that plaque is a quotation that captures plainly and honestly the noble proportions and intentions of Congressman Moakley's career. It comes from a speech that he gave at the University of Central America, in El Salvador, about the rule of law and democracy and justice, in which he held the highest officials of that ravished nation to institutional responsibility. "There is no such thing as half justice," he said. "You either have justice or you don't. You either have a democracy in which everyone—including the powerful—is subject to the rule of the law, or you don't." That quotation enters into the conversation among the inscriptions that John Benson has carved throughout this building. In particular, it reflects application of the principle stated by Justice Louis D. Brandeis in the quotation encountered at the main staircase stairs on the other side of the entrance hall: "Justice Is But Truth in Action." I suspect that Justice Brandeis would understand that there was more to Congressman Moakley's speech that day nearly a decade ago in El Salvador than what we had space to capture on the plaque. Confronting a recalcitrant military who attempted to cover up their murder of six Jesuit priests, a housekeeper, and her daughter, Joe Moakley went on to echo Justice Brandeis and tell them, "Truth is not the enemy.… Without the truth … government cannot lay claim to truly democratic institutions.""

> "Our government is the potent, omnipresent teacher. For good or for ill, it teaches the whole people by its example."

> ""[i]n a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously." He went on to observe that, "[i]f the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." Brandeis therefore

maintained that the government must be held to high standards in providing an example for the rest of society."

Perhaps we should add another quote from Justice Brandeis that truly depicts AUSA Lockhart:

"The greatest dangers to liberty lurk in the insidious encroachment by men of zeal, well-meaning but without understanding."

But Justice Breyer's Opinion in *Ruan* clearly supports Petitioner's point that the Indictment in this case was defective, as does this Court's decision in *Adbelaziz*. That leaves only *Castro-Taveras* which ironically was a win for the Defendant in a *coram nobis* case. With all due respect to AUSA Lockhart, if the Defendant *Castro-Taveras* was allowed to build a "Church" on his one issue, Petitioner-Carpenter should be allowed to build a "Cathedral" based on *Ruan*, *Ciminelli*, *Abdelaziz*, and *Smith*, not to mention the famous Venue issue of *Salinas* mentioned in *Castro-Taveras* and *Williams*:

> So, what is the supposed fundamental error that would justify granting Petitioner this "extraordinary" and "hen's-teeth rare" writ? *George*, 676 F.3d at 253–54. In Petitioner's opinion, it was the performance of his attorney, which he claims was constitutionally deficient under Sixth Amendment standards, during the proceedings for his long-since-passed conviction. See generally *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). **Such constitutionally deficient representation, if true, can function as the rock upon which a petitioner can build her coram nobis church. See *United States v. Castro-Taveras*, 841 F.3d 34, 36–37, 52–53 (1st Cir. 2016) (allowing a defendant to premise his coram nobis petition on a Sixth Amendment ineffective-assistance-of-counsel claim); *Murray v. United States*, 704 F.3d 23, 2**8 (1st Cir. 2013) (noting that writs of coram nobis are "meant to correct errors 'of the most fundamental character; that is, such as render[ ] the proceeding itself irregular and invalid' " (alteration in original) (emphasis added) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914))).

To demonstrate his attorney's allegedly deficient performance, Petitioner first points to his change-of-plea hearing from July 29, 2004. As is relevant here, when Petitioner walked into that hearing to plead guilty, he had not yet been charged under § 1001; instead, he had been charged under 18 U.S.C. § 1542 with the crime of passport fraud. And in fact, Petitioner had filed motions to dismiss the passport fraud indictment for improper venue and to transfer the case to the Eastern District of New York, where Petitioner had actually made his false citizenship claims and where he lived at the time, from the District of New Hampshire, where his passport application had been processed and where the indictment was currently pending. The district court had initially denied both motions but changed course at the hearing after recognizing that our then-recent decision in *United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004), mandated that venue did, in fact, lay in the Eastern District of New York. And in light of that recognition, the district court asked Petitioner whether he wished to waive venue and proceed with his guilty plea in the District of New Hampshire.

*Williams v. United States,* 858 F.3d 708, 712 (1st Cir. 2017).

Therefore, contrary to AUSA Lockhart's illogical assertions, Petitioner is still suffering from his unlawful conviction of 2014 (not 2008 when the second jury verdict was thrown out by Judge O'Toole) after two jury verdicts were thrown out due to egregious prosecutorial misconduct. Petitioner is also absolutely innocent as a matter of law pursuant to recent Supreme Court rulings, such as the 9-0 unanimous decision in *Xiulu Ruan v. United States*, 142 S. Ct. 3370 (2022), requiring specific intent "*mens rea*" in any indictment for fraud (decided on June 27, 2022); and in *Ciminelli v. United States*, 143 S. Ct. 1121 (2023), in which the Court foreclosed prosecutors' ability to pursue fraud charges for misrepresentations that did not intend to result in financial harm, but instead deprived victims of information under the Right to Control Theory

of Fruad that may have been useful in deciding how to use assets. Petitioner cannot seem to do any "effective" filing in the First Circuit despite his innocence because of the Government's prejudicial filings there.

In 2004, Professor Alan Dershowitz – Petitioner's first attorney in Boston – explained to the Court the defects of the original indictment. The Government merely added the word "material" to seven paragraphs, thereby "broadening" the untimely September 2004 Superseding Indictment. That is all. They did not add the words "*in furtherance of the fraud*" or "*duty to disclose*" or "*specific intent to defraud*" or "*scienter*" or the phrase "*mens rea*" to express the concurrence of an "*evil thinking mind*" with an "*evil doing hand*", as is required for a federal crime in this country. *See Morissette* citing *McBoyle*, 342 U.S. 246, 250–252, (1952), as well as *Xiulu Ruan* below.

Rather than reciting cases that the District Court continues to ignore in 2024, Petitioner would prefer to cite Justice Breyer's writing for a 9-0 unanimous Supreme Court in *Ruan* in 2022, describing what is absolutely required in any indictment:

> **First, as a general matter, our criminal law seeks to punish the "vicious will."** *Morissette v. United States*, **342 U.S. 246, (1952); With few exceptions, "wrongdoing must be conscious to be criminal."** *Elonis v. United States*, **575 U.S. 723, 734, (2015) (quoting** *Morissette*, **342 U.S. at 252, 72 S.Ct. 240).** Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

**Consequently, when we interpret criminal statutes, we normally "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state."** *Rehaif v. United States*, **588 U. S. ——, ——, 139 S.Ct. 2191, 2195, (2019). We have referred to this culpable mental state as "scienter," which means the degree of knowledge necessary to make a person criminally responsible for his or her acts.** *Morissette*, **342 U.S. at 250–252, 72 (1952)**

**Applying the presumption of scienter, we have read into criminal statutes that are "silent on the required mental state"—meaning statutes that contain no** *mens rea* **provision whatsoever— "that** *mens rea* **which is necessary to separate wrongful conduct from "otherwise innocent conduct."** *Elonis*, **575 U.S. at 736, 135 S.Ct. 2001.** Unsurprisingly, given the meaning of scienter, the *mens rea* we have read into such statutes is often that of knowledge or intent. *See, e.g., Staples v. United States*, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–446, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

And when a statute is not silent as to *mens rea* but instead "includes a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. *Rehaif,* 588 U. S., at ——, 139 S.Ct., at 2195 (emphasis added). We have accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at ——, 139 S.Ct., at 2197; see, e.g., ibid.; *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464 (1994); *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Applying § 841's "knowingly or intentionally" *mens rea* to the authorization clause thus "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Rehaif,* 588 U. S., at –——, 139 S.Ct., at 2197; see also *X-Citement Video*, 513 U.S. at 72–73, 115 S.Ct. 464.

Rather, § 841 imposes severe penalties upon those who violate it, including life imprisonment and fines up to $1 million. See § 841(b)(1)(C); see generally § 841(b). **Such severe penalties counsel in favor of a strong scienter requirement. See Staples, 511 U.S. at 618–619, 114 S.Ct. 1793 (noting that "a severe penalty is a further factor**

**tending to suggest that ... the usual presumption that a defendant must know the facts that make his conduct illegal should apply")**; *United States Gypsum*, 438 U.S. at 442, n. 18, 98 S.Ct. 2864.

Analogous precedent reinforces our conclusion. In *Liparota*, we interpreted a statute penalizing anyone who " 'knowingly uses [food stamps] in any manner not authorized by' " statute. 471 U.S. at 420, 105 S.Ct. 2084. We held that "knowingly" modified both the "use" of food stamps element and the element that the use be "not authorized." *Id.*, at 423, 433, 105 S.Ct. 2084. We applied "knowingly" to the authorization language even though Congress had not "explicitly and unambiguously" indicated that it should apply. *Id.*, at 426, 105 S.Ct. 2084. But if knowingly did not modify the fact of nonauthorization, we explained, the statute "would ... criminalize a broad range of apparently innocent conduct." *Ibid.*

Similarly, in *X-Citement Video*, we interpreted a statute penalizing anyone who " 'knowingly transports' " or " 'knowingly receives' " videos " 'involv[ing] the use of a minor engaging in sexually explicit conduct.' " 513 U.S. at 68, 115 S.Ct. 464. **We held that "knowingly" applied not only to the element of transporting or receiving videos but also to the elemental fact that the videos involve "the use of a minor."** *Id.*, at 66, 115 S.Ct. 464. We recognized that this was not "the most grammatical reading of the statute." *Id.*, at 70, 115 S.Ct. 464. But, we explained, "the age of the performers is the crucial element separating legal innocence from wrongful conduct," for possessing sexually explicit videos involving nonminors is protected First Amendment activity. *Id.*, at 72–73, 115 S.Ct. 464.

Finally, in *Rehaif*, we interpreted a statutory scheme in which one statutory subsection provided penalties for anyone who "knowingly violates" a separate subsection. 588 U. S., at —— – ——, 139 S.Ct., at 2195-2196. This latter subsection made it "unlawful" for people with certain statuses (i.e., being a felon or being in the country unlawfully) to possess a gun. *Ibid.* We held that the first subsection's "knowingly" language applied to the status element in the second subsection. *Id.*, at ————, 139 S.Ct., at 2196. To convict under the statute, then, the Government had to prove that a defendant knew he had one of the listed statuses. Ibid. "Without knowledge of that status," we reasoned, "the defendant may well lack the intent needed to make his behavior

wrongful," because "[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent." Id., at – ——, 139 S.Ct., at 2197. *Ruan v. United States*, 142 S. Ct. 3370 (2022).

As the Court can clearly see—none of the requirements concerning scienter, *mens rea*, or "knowingly" violating a statute, that Justice Breyer speaks of as constitutionally required can be found in Petitioner's Superseding Indictment from Boston in 2004. Therefore, if Petitioner's Indictment of 2004 did not meet Justice Breyer's standards in 2022, then the District Court lacked jurisdiction, and Petitioner's conviction by the First Circuit in 2013, which was not by a jury of the proper Vicinage of the District of Connecticut, must be thrown out, as Judge O'Toole did twice to the jury verdicts of 2005 and 2008, for egregious prosecutorial misconduct.

# EXHIBIT ONE

## Letter to Justice Breyer

The Honorable Stephen G. Breyer
Associate Justice
Supreme Court of the United States
One First Street N.E.
Washington, D.C. 20543
202-479-3011 (Clerk's Office)


**RE: SUPERVISION OF FIRST CIRCUIT APPEAL**
**REQUEST FOR WRIT PURSUANT TO 28 USC 2106**


Dear Justice Breyer:


Thank you for your service to our country, the Constitution, and the Rule of Law. I am writing to you personally because I was so moved by Judge Jackson's description of your mentorship when she was your Clerk. I also believe as you do that this next generation must be vigilant in protecting the Constitution and our Republic. The most important part of our Constitution is the protection of individual rights, which you have been a champion of – especially in difficult cases like the Boston Bomber. I agree with your dissent, but as I had Judge O'Toole grant me not one, but TWO New Trial orders pursuant to Rule 33 for egregious prosecutorial misconduct, I felt that I needed to reach out to you to let you know that the First Circuit is clearly broken and would greatly benefit from your counsel to fix it. I hope you will continue as a judge in the First Circuit. It is also disappointing that no one in the media pointed out that Judge Jackson was a defense attorney earlier in her career. Please let her know that if I was President, she would have been at the top of my list for that fact alone. There should be a requirement that any future Justice has to defend a presumed innocent individual just so a judge can see how our individual liberties have been worn away.

I am an "actually" innocent person, who was indicted in Boston in 2004 for losing money for clients in the NASDAQ stock market crash of 2000. My alleged victims were all paid back $50,000,000 on my $8,000,000 loss because of my legal victories over Paine Webber and Merrill Lynch. In fact, my victims were all made whole by receiving over $14,000,000 before my second trial in 2008. Judge O'Toole threw out the jury verdict of my first trial in 2005 because of egregious prosecutorial misconduct.

My alleged victims all settled with me in 2015 (and some actually forgave me) while I was serving my 36-month sentence after the First Circuit overturned Judge O'Toole's Second New Trial Order in late 2013 – and asked Judge O'Toole to "speedily sentence" me without delay. As you might imagine – my Speedy Trial delays are much longer than *Bloate v. U.S.*, 559 U.S. 196 (2010) and *United States v. Tinklenberg*, 131 S.Ct. 2007 (2011) and double the combined lengths of *United States v. Irizarry-Colon*, 848 F.3d 61 (1st Cir. 2017) and *United States v. Handa*, 892 F.3d 95 (1st Cir. 2018), which both mention my case as the standard for Speedy Trial in the First Circuit.

While my Venue violations and Speedy Trial violations are the most egregious in our Nation's history, I wanted to focus your attention on several comments made by the Assistant U.S. Attorney Mark T. Quinlivan in my case where he is asking for a Rule 27(c) Summary Dismissal of my Petition for a *Writ of Audita Querela*. AUSA Quinlivan submitted a motion for extension two days after the Government's original brief was due. Therefore, the Government missed its deadline by two days. Many *pro se* litigants have been denied relief for missing a deadline by just one day. Please see my objection to that extension request attached as *Exhibit One*. I have also attached my Reply Brief as *Exhibit Two* to illustrate the many egregious Constitutional violations in this case going back over 20 years.

Then after waiting another two months, AUSA Quinlivan filed a Motion for Summary Dismissal pursuant to Rule 27(c), stating that Improper Venue in my case had been argued "*ad nauseum*" (which a Westlaw search proves to be clearly untrue)– and he actually stated that it was acceptable under the Constitution for the Government to knowingly submit perjured testimony from a lying Government witness, as long as those false statements were subject to a vigorous cross examination. As Your Honor knows well, that is not the standard in any Circuit much less Massachusetts, which is the birthplace of our nation. *See* "AUSA Quinlivan Submission" attached as *Exhibit Three.* As Your Honor stated in *Turner v. United States*, 137 S. Ct. 1885, (2017) the Government should be held to a high standard:

> The Government does not contest petitioners' claim that the withheld evidence was favorable to the accused, either because it is exculpatory, or because it is impeaching. Neither does the Government contest petitioners' claim that it suppressed the evidence, either willfully or inadvertently. It does, as it must, concede that the *Brady* rule's overriding concern is with the justice of the finding of guilt, and that the Government's interest in a criminal prosecution is not that it shall win a case, but that justice shall be done. Consistent with these principles, the Government assured the Court at oral argument that subsequent to petitioners' trial, it has adopted a generous policy of discovery in criminal cases under which it

discloses any information that a defendant might wish to use. As we have recognized, and as the Government agrees this is as it should be.

Petitioners and the Government, however, do contest the materiality of the undisclosed *Brady* information. Evidence is "material" within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial. In other words, petitioners here are entitled to a new trial only if they establish the prejudice necessary to satisfy the materiality' inquiry.

I am innocent of all charges in my Indictment from 2004, which failed to state a federal crime pursuant to *Skilling v. United States,* 561 U.S. 358 (2010). "Nondisclosure is outside the bounds of the fraud statutes" (*Skilling* at 410) and certainly under the standards set in the "Bridgegate" case of *Kelly v. United States*, 140 S.Ct. 1565 (2020). Obviously, I have served my sentence but still have $14,000,000 in unlawful forfeitures that ignored the $50,000,000 that I paid to my alleged victims. And I still suffer from the effects of an unlawful conviction.

While I was in prison for a "non-crime" that I did not commit, I helped over 180 inmates with their legal work, and actually succeeded in getting 120 people released early under the Fair Sentencing Act, the First Step Act, and the CARES Act. So, my principal motivation is not to secure my own personal release from prison, but rather use my case as a "teaching moment" for the Judges of the First Circuit because if I was a Judge on the First Circuit and read AUSA Quinlivan's filing in my case, I would recommend that he be released from Government service or sanctioned in some way –as Justice Sutherland famously stated in *Berger v. U.S,* 295 U.S. 78 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. The court below said that the case against Berger [Carpenter] was not strong; and from a careful examination of the record, we agree. Indeed, the case against Berger, who was convicted only of conspiracy and not of any substantive offense as were the other defendants, we think may properly be characterized as weak—depending, as it did, upon the [perjurious] testimony of Katz [Gerry Levine], an accomplice with a long criminal record.

Please let me know how I can work with your staff to present a formal motion to Your Honor, whether it be a *Writ of Mandamus* or a Writ pursuant to 28 USC 2106. Also, please let me know I can help you to fix the First Circuit, or put those AUSAs like AUSA Quinlivan under the same scrutiny as Judge Allison Nathan did in the Second Circuit with *United States v. Nejad,* 521 F. Supp. 3d 438, 442 (S.D.N.Y. 2021), where she vacated Nejad's conviction and had every AUSA in the Circuit read her opinion. In my case, based on Judge Roach's 2016 opinion in the civil case, eight different Government witnesses lied in my criminal case, not just Gerry Levine. Similarly, if there is a certain attorney or a law firm that I should work with – please let me know. I have been acting *"pro se"* since my attorneys at Greenberg Traurig abandoned me to defend brokers at Merrill Lynch.

This explains why no one mentioned the then-recently decided *Skilling* decision in my appeal, because my second trial was in 2008 and Judge O'Toole did not grant my Second New Trial Order until September of 2011. That alone raises some Due Process Delay issues under *Betterman v. Montana,* 136 S.Ct. 1609 (2016).

In conclusion, I would appreciate any help that Your Honor can give me in my case so that I can help friends of mine that are still in prison and could use my case as a good example to secure their freedom utilizing a *Writ of Coram Nobis* or a *Writ of Audita Querela* as I have pending on appeal in the First Circuit.

Thank you in advance for any help or guidance you can give me in this matter.

Respectfully Submitted,
Daniel E. Carpenter
Petitioner Pro Se
18 Pond Side Lane
West Simsbury, CT.
06092

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type Style Requirements**

1.    This motion for summary disposition complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the certificates of counsel, it contains 4,621 words (a response motion for summary disposition may not exceed 5,200 Words).

2.    This Opposition to the Government's Motion for summary disposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word 2016.

Date:  July 25, 2024

s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner *pro se*
18 Pond Side Lane
West Simsbury, CT 06092
860-573-7770

## CERTIFICATE OF SERVICE

I, Daniel E. Carpenter, hereby certify that on July 25, 2024, I electronically served a copy of the foregoing document on AUSA Donald Lockhart via the CM/ECF system.

> */s/ Daniel E. Carpenter*
> DANIEL E. CARPENTER
> Petitioner *pro se*
>
> Daniel E. Carpenter
> 18 Pond Side Lane
> West Simsbury, CT 06092